IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EL CHICO RESTAURANTS OF TEXAS, INC., *d/b/a* CANTINA LAREDO, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:09-CV-2294-L** |
| MEXICAN INN OPERATIONS #2, LTD. *d/b/a* CASA RITA MEXICAN GRILL and CHRISTOPHER CARROLL, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Second Motion for Summary Judgment [Doc. #121], filed July 12, 2011; [Defendants'] Objection to and Motion to Strike Plaintiff's Second Summary Judgment Proof [Doc. #135], filed August 22, 2011; and [Defendants'] Motion for Reconsideration of Denial of Defendants' Motion for Summary Judgment and Motion for Leave to Supplement Motion for Summary Judgment as Moot [Doc. #145][1], filed September 2, 2011.

After carefully considering the motions, responses, replies, appendices, and applicable law, the court **denies** Defendants' Second Motion for Summary Judgment [Doc. #121]; **overrules** [Defendants'] Objection to and Motion to Strike Plaintiff's Second Summary

---

[1] In its order dated, July 7, 2011 [Doc. #119], the court denied Defendants' Motion for Summary Judgment and all pending motions as moot, as the court believed Defendants' Second Motion for Summary Judgment encompassed all claims previously asserted and was a more complete motion. Upon further examination, the court recognizes that Defendants' Second Motion for Summary Judgment does not address all claims asserted in the first motion for summary judgment. On September 2, 2011, Defendants filed their Motion for Reconsideration of Denial of Defendants' Motion for Summary Judgment and Motion for Leave to Supplement Motion for Summary Judgment as Moot [Doc #145]. For the reasons stated herein the court **denies** [Defendants'] Motion for Reconsideration of Denial of Defendants' Motion for Summary Judgment and Motion for Leave to Supplement Motion for Summary Judgment as Moot [Doc. #145]. The court, however, for clarity discusses the grounds raised in Defendants' Motion for Summary Judgment.

**Memorandum Opinion and Order – Page 1**

Judgment Proof [Doc. #135]; **denies** [Defendants'] Motion for Reconsideration of Denial of Defendants' Motion for Summary Judgment and Motion for Leave to Supplement Motion for Summary Judgment as Moot [Doc. #145]; and **denies** all motions pending as of the date of this memorandum opinion and order, unless otherwise herein stated.

## I. Factual and Procedural Background

On December 2, 2009, El Chico Restaurants of Texas, Inc. d/b/a Cantina Laredo ("Cantina Laredo" or "Plaintiff") filed its Original Complaint against SpringCreek Hospitality, Inc. d/b/a Casa Rita Mexican Grill and Christopher Carroll. Plaintiff amended its complaint to name Mexican Inn Operations #2, Ltd. in lieu of SpringCreek Hospitality, Inc. as owner of Casa Rita Mexican Grill (Casa Rita Mexican Grill and Christopher Carroll, collectively referred to as "Defendants"). Plaintiff sues Defendants for infringement of its trade dress, asserting that Defendants operate a restaurant that is substantially similar in the design, presentation, size, color, shape, text, graphics, combination of text and graphics, placement, order, and technique, and is causing or likely to cause confusion as to the source of the goods or services. Plaintiff asserts that Defendants' conduct constitutes infringement of trade dress, pursuant to 15 U.S.C. § 1125; an exceptional case of infringement, pursuant to 15 U.S.C. § 1117; false designation of the origin of goods or services, pursuant to 15 U.S.C. § 1125(a); trade dress infringement and unfair competition under common law; unfair competition, pursuant to 15 U.S.C § 1125(a) and state common law; and dilution, pursuant to Tex. Civ. Prac. & Rem. Code § 16.29. Plaintiff also asserts that it is entitled to a permanent injunction. Defendants assert a counterclaim that the "Casa Rita" word mark in the registration for prepared alcoholic cocktails is invalid as being generic or merely descriptive. Defendants seek an order directing the Director of the United States Patent and Trademark Office ("USPTO") to cancel the registration.

Plaintiff owns and operates a chain of Mexican food restaurants called Cantina Laredo. The first Cantina Laredo restaurant opened in Addison, Texas, approximately twenty-five years ago. Plaintiff and its affiliates began expansion of Cantina Laredo in 2002. Since that time, Cantina Laredo has grown to 34 restaurants in twelve states and two foreign countries.

Cantina Laredo describes its restaurants as having a unique, contemporary, sophisticated décor.

> Cantina Laredo's décor consists of minimal materials and colors, with sparse, modern, ethnic décor. Specifically, Cantina Laredo's restaurant design consists of a dining area with maple wood veneer paneling in a square-rectangle-square pattern, with exposed seams painted black. Cantina Laredo's walls are washed with lighting, and do not have art work on them. The walls in the dining area are lined with angled mirrors. Cantina Laredo restaurants have black field ceilings, with white soffits around the perimeter with recessed lighting. The dining room décor consists of butcher-block tables surrounded by maple chairs with black seats and black booths, with head-roll at the top. Cantina Laredo's bar has a wood paneled barrel-vault above the bar, pendant lighting over the bar-top; and metal shelves with glass. Cantina Laredo even created a unique design for its bathrooms, consisting of mirrors off-set from the wall with back lighting at the top and bottom, round stainless steel sink bowls, four-light custom wood restroom doors with frosted glass at main entry to the restroom.

Pl.'s Second Am. Compl. ¶ 11.

Cantina Laredo has a signature margarita called the "Casa Rita." Beginning at least as early as 2002, Cantina Laredo has promoted and sold and continues to promote and sell the "Casa Rita" as its signature drink. On March 15, 2005, Plaintiff filed a trademark application with the USPTO for the word mark "Casa Rita." On March 18, 2008, the USPTO awarded Plaintiff U.S. Trademark Registration No. 3,398,400 for its word mark "Casa Rita."

In mid-2005, Cantina Laredo began to explore opening a restaurant in Fort Worth, Texas. Around 2005, Christopher Carroll ("Carroll"), owner of Mexican Inn Operations #2, Ltd. ("MIO"), contacted Cantina Laredo and inquired about acquiring the Fort Worth Cantina Laredo franchise. The parties agreed to meet to discuss Carroll's acquisition of a Cantina Laredo

franchise. Cantina Laredo disclosed its franchise terms to Carroll. Carroll opted not to open a Cantina Laredo franchise. Cantina Laredo continued to pursue its plan to open a restaurant in Fort Worth. In 2006, Cantina Laredo executed a lease to open a restaurant at 530 Throckmorton, Fort Worth, Texas, and in 2007, opened its Forth Worth location.

In 2006, Plaintiff undertook a redesign of the Cantina Laredo interior décor to distinguish it from other restaurants in the Mexican food market. Cantino Laredo sought a contemporary, sophisticated decor to set the brand apart from the generally colorful, south-of-the-border look of other Mexican food restaurants. In November 2006, Plaintiff unveiled its new design when it opened a Cantina Laredo in Branson, Missouri. In December 2006, Plaintiff opened a Cantina Laredo in Shreveport, Louisiana, followed by one in Sandestin, Florida, and then, in July 2007, Fort Worth, Texas. Plaintiff has used and implemented the new design features in each Cantina Laredo restaurant it has opened since 2006, including the Cantina Laredo restaurant in Fort Worth, Texas.

On June 4 2008, Carroll and MIO opened a Mexican food restaurant called "Casa Rita's Mexican Grill," nine miles from Cantina Laredo's Fort Worth location. Plaintiff asserts that Defendants' Mexican food restaurant copied Cantina Laredo's unique design and architectural features, such as the color schemes, wood paneling, shapes, and bar design. Plaintiff also asserts that Defendants incorporated Cantina Laredo's signature margarita into their restaurant and named it "Casa Rita's Mexican Grill."

## II. Legal Standard for Motion for Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v.*

*Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary

judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Analysis

Defendants move for summary judgment on their counterclaim seeking invalidation of Plaintiff's federal trademark Registration No. 3,398,400 for "Casa Rita" for prepared alcoholic cocktails. Defendants also move for summary judgment that Plaintiff has no protectable trade dress in its interior décor of the Cantina Laredo-Fort Worth restaurant because it is not distinctive. Common to all causes of action and requests for relief asserted by Cantina Laredo is the necessity of establishing a trademark or trade dress that qualifies for protection. Defendants assert that both "Casa Rita" and the interior décor of Cantina Laredo's Forth Worth location lack the distinctiveness required to merit trademark and trade dress protection.

### A. Legal Standard for Trademark and Trade Dress Infringement

Federal claims for trademark and service mark[2] infringement "are governed by the Trademark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1051 *et seq*." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 (5th Cir. 2010). Under the Lanham Act, "trademark" and "service mark" are separately defined, but the terms essentially include:

---

[2] Service marks are similar to trademarks but are applied to services instead of goods as with trademarks. 15 U.S.C. § 1127.

**Memorandum Opinion and Order – Page 6**

> any word, name, symbol, or device, or any combination thereof used by a person to identify and distinguish his or her goods or services from those manufactured or sold or provided by others and to indicate the source of the goods or services, even if that source is unknown.

*Id.* at 236 (quoting Lanham Act § 45, 15 U.S.C. § 1127 ) (ellipses, brackets, and citations omitted). "The analysis with respect to [a plaintiff's] claims under the Lanham Act will be dispositive of its corresponding claims under Texas law . . . [as] a trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." *Id.* at 236 n.7 (internal quotation marks and citations omitted). "Although the Lanham Act separately establishes [] causes of action, the same tests apply to both trademarks and trade dress to determine whether they are protectable and whether they have been infringed, regardless of whether they are registered or unregistered." *Id.* at 236 n.8

To prevail on an infringement claim under the Lanham Act, the plaintiff must: (1) establish ownership in a legally protectable mark, and (2) show infringement by demonstrating a likelihood of confusion. *Amazing Spaces,* 608 F.3d at 235-36 (citations omitted). Whether a claim of infringement or defense of invalidity is under consideration, the threshold determination made by the court is whether a trademark, service mark, or trade dress is entitled to protection. *See Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 844 (5th Cir. 1990) ("The threshold issue in any action for trademark infringement is whether the word or phrase is initially registerable or protectable.") This analysis involves a determination by the court of where along a spectrum of "protectablity" the mark at issue belongs. *Id.* Trademarks and service marks are classified into the following categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4), arbitrary, or (5) fanciful. *Two Pesos v. Taco Cabana*, 505 U.S. 763, 768 (1992). The latter three categories of marks, because their intrinsic nature serves to identify a

**Memorandum Opinion and Order – Page 7**

particular source, are deemed inherently distinctive and are entitled to protection. *Id.* In contrast, generic marks are not protectable or registrable as trademarks or service marks. *Id.* Marks that are merely descriptive of a product are not inherently distinctive; however, descriptive marks may acquire the distinctiveness that will allow them to be protected under the Lanham Act if they have become distinctive of the applicant's goods in commerce. *Id.* at 769. This acquired distinctiveness is generally called "secondary meaning." *Id.* "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning. *Two Pesos*, 505 U.S. at 769.

### B. Defendants' Counterclaim of Invalidity

#### 1. Legal Standard and Statutory Presumption of Validity

Proof that a mark has been registered with the United States Patent and Trademark Office constitutes *prima facie* evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services. *Amazing Spaces*, 608 F.3d at 237 (citing Lanham Act, 15 U.S.C. §§ 1057(b) and 1115(a)). "This presumption of validity may be rebutted by establishing that the mark is not inherently distinctive." *Id.* (citation omitted). Although a statutory presumption of validity is accorded to marks registered under the Lanham Act, this presumption is rebuttable and may be overcome by establishing that the mark is generic or descriptive and lacking secondary meaning. *Id.* (citations omitted).

> The presumption of validity flowing from trademark registration . . . has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is [non-distinctive] by a preponderance of evidence. The burden shifted by the presumption is one of production rather than persuasion. If sufficient evidence of [non-distinctiveness] is produced to rebut the presumption, the presumption is "neutralized" and

>essentially drops from the case, although the evidence giving rise to the presumption remains.

*Amazing Spaces*, 608 F.3d at 239 (quoting *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 542-43 (4th Cir. 2004) and expressing with approval its approach with respect to the presumption of validity).

Categorization of a mark is a factual issue. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "A *generic* term is the name of a particular genus or class of which an individual article or service is but a member. A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product." *Amazing Spaces*, 608 F.3d at 241 (citation omitted). "Such terms as aspirin and cellophane have been held generic and therefore unprotectable as trademarks." *Id.* "In determining whether a trademark is generic, the mark must be compared to the product or service to which it is applied." *Urgent Care Inc. v. South Miss. Urgent Care, Inc.*, 289 F. App'x. 741, 743 (5th Cir. 2008) (citing *Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 846 (5th Cir. 1990)). "[T]he question is, '[w]hat do the buyers understand by the word for whose use the parties are contending?'" *Union Nat'l Bank*, 909 F.2d at 847 (citation omitted). "In determining whether a mark is generic, [a court] may consider the dictionary definition and consumer surveys, although neither is dispositive." *Urgent Care Inc.*, 289 F. App'x. at 743 (citing *Union Nat'l Bank*, 909 F.2d at 847). "Furthermore, [the court] may consider whether others in the same business would generally need the word to adequately describe their product or service and evidence regarding how many other businesses, in the same industry, use the term to describe their product." *Urgent Care Inc.*, 289 F. App'x. at 743 (citing *Union Nat'l Bank*, 909 F.2d at 848).

### 2. Protectability

Defendants assert "Casa Rita" is invalid as a trademark because it is generic as a matter of law. Specifically, Defendants contend that "Casa Rita," translated from Spanish to English, means "house rita" or "house margarita," and is generic for prepared alcoholic drinks, which includes margaritas. Defendants contend that if Cantina Laredo is allowed to keep its registration, other Mexican restaurants will be unable to use a Spanish term to name their house margarita. Defendants argue that third parties commonly use "Casa Rita" to refer to their own "house margaritas." Defendants also assert that Cantina Laredo's registration, alone, should not be taken as evidence of distinctiveness because the USPTO examining attorney was led to believe that "Casa Rita" translated to "rita house" rather than "house rita." Defendants assert, in the alternative, that "Casa Rita" is merely descriptive of prepared alcoholic cocktails, which includes margaritas, and Cantina Laredo is unable to show that "Casa Rita" has acquired a secondary meaning. Defendants assert that "house margarita" or its Spanish equivalent is used by far too many restaurants for the term to identify a single source for house margaritas for acquisition of secondary meaning.

Plaintiff asserts that its certificate of registration is *prima facie* evidence that its mark is not generic in the eyes of the relevant public. According to Plaintiff, Defendants' argument hinges on their Spanish to English translation of "Casa Rita," and Defendants have presented no evidence supporting their assertion that "Casa Rita" translated from Spanish to English is "house rita" or "house margarita." According to Plaintiff, the Spanish translation of "house margarita" is "margarita de la casa," and the English translation of "Casa Rita" is "rita house." As a result, Plaintiff asserts that Defendants' entire argument fails.

Defendants counter that Plaintiff has failed to translate "Casa Rita" in context and that spelling and grammar differences have been held not to affect the use of words in trademarks and that Cantina Laredo's own use of "Casa Rita" for "house margarita" along with similar use by numerous third parties demonstrate that the term is generic.

### C. Plaintiff's Claim of Trade Dress Infringement

#### 1. Legal Standard

Trade dress encompasses "the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces*, 608 F.3d at 251 (citation omitted). "Trade dress protection has been extended to the overall 'motif' of a restaurant" *Id.* (citing *Two Pesos*, 505 U.S. at 765). "The purpose of trade dress protection, like trademark protection, is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products." *Amazing Spaces*, 608 F.3d at 251 (internal quotation marks and citations omitted). "With trade dress, the question is whether the combination of features creates a distinctive visual impression, identifying the source of the product." *Pebble Beach Co. v. Tour 18 I*, 155 F.3d 526, 536 (5th Cir. 1998) (citation omitted).

"The same tests apply to both trademarks and trade dress to determine whether they are [protectable] and whether they have been infringed, regardless of whether they are registered or unregistered." *Pebble Beach*, 155 F.3d at 536 (citation omitted). Both are protectable if they are inherently distinctive or have achieved secondary meaning in the public's mind, that is, if the trade dress or mark "has come through use to be uniquely associated with a specific source." *Id.* (citation omitted). Trade dress is not protectable and cannot be distinctive if it is functional, that

**Memorandum Opinion and Order – Page 11**

is, if the design "is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection." *Id.* (citation omitted). "Once a plaintiff's mark or trade dress is found to be [protectable], liability for trademark and trade-dress infringement hinges upon whether a likelihood of confusion exists in the minds of potential consumers as to the source, affiliation, or sponsorship of the defendant's product or service due to the use of the allegedly infringing marks or trade dress." *Pebble Beach*, 155 F.3d at 536-537. The functionality, distinctiveness, or secondary meaning of a mark or trade dress and the existence of a likelihood of confusion are questions of fact. *Id.*

### 2. Protectability

Defendants assert that Plaintiff cannot establish that its interior décor qualifies for protection as a trade dress because Plaintiff's asserted trade dress lacks distinctiveness. Defendants assert that their restaurant is located in north Fort Worth, drawing the vast majority of its customers from nearby. Defendants contend that Plaintiff has ten Cantina Laredo restaurants in the Dallas-Fort Worth ("DFW") area, and, thus, the issue of likelihood of confusion and ultimately trademark infringement must be determined using the DFW area and not the entire country. Accordingly, Defendants assert that Cantina Laredo must show that its trade dress is distinctive in the DFW Metroplex.

Defendants argue that Cantina Laredo's trade dress is not inherently distinctive, as there is nothing unique about the elements of the Cantina Laredo-Fort Worth restaurant interior through which Plaintiff seeks to establish a trade dress. Further, Defendants assert that Plaintiff is unable to prove its décor has acquired a secondary meaning considering the length and manner of use and that Cantina Laredo-Fort Worth is the only one of the DFW locations that uses the

claimed trade dress. According to Defendants, the wide disparity of décor and inconsistency of motif of Plaintiff's restaurants preclude acquisition of secondary meaning. Defendants also asserts that, of the consumer reviews produced, none of the consumers shows a recognition of the interior décor as anything other than decoration, much less a symbol of origin or source. Finally, Defendants assert that although a few elements of Cantina Laredo's claimed trade dress appear in the interior décor of Casa Rita's Mexican Grill, and that copying may be inferred, a mere inference of copying is insufficient by itself to prove acquisition of secondary meaning. Defendants also state that the summary judgment evidence shows that they had no notice of Plaintiff's trade dress until well after their restaurant opened and there was no intentional copying.

Plaintiff counters that the court should consider all of its restaurants, and not just the restaurants selected by Defendants. Plaintiff also asserts that whether its trade dress is distinctive is a question of fact for the jury. According to Plaintiff, Defendants argue that various elements comprising the interior décor of Cantina Laredo are routinely and generally found in use in other buildings, establishments, and restaurants. According to Plaintiff, Defendants contend that there is nothing unique about Cantina Laredo's combinations of maple veneer wall paneling, the location or covering of the restaurant's tables and the black vinyl booths. Plaintiff argues that Defendants cannot avoid infringement liability simply by pointing to particular elements they might have fairly employed for their own trade dress. Plaintiff argues that it has assembled the elements of its décor in a unique manner, which differentiates it from the traditional, generic or descriptive, Mexican restaurant that has the "fiesta" or "border" look. Further, Plaintiff asserts that it has consistently applied its trade dress to each Cantina Laredo restaurant it has opened

since 2006, and that it requires franchisees to comply with its design specifications. Plaintiff also asserts that direct copying is evidence of uniqueness.

### 3. Likelihood of Confusion

Defendants assert that a review of the total image and appearance of their restaurant and Plaintiff's restaurant reveals significant differences. Defendants assert that with respect to Casa Rita's exterior, the location, parking area, and signage is different from Cantina Laredo, and with respect to the Casa Rita's interior, the floor plan is completely different from Cantina Laredo. Defendants also contend that, although both restaurants serve Mexican food and try to serve a more upscale market, their customer base does not overlap with that of Cantina Laredo.

Plaintiff argues that there is a strong similarity between the interior design of Cantina Laredo-Fort Worth and the interior of Defendants' restaurant; Defendants' product (Mexican food) is identical to Plaintiff's; both parties are located in Fort Worth and sell to the same customer base; and Defendants intentionally copied the Cantina Laredo design. Accordingly, Plaintiff argues that a reasonable juror could conclude that a likelihood of confusion exists.

### 4. Damages and Attorney's Fees

Defendants assert that Cantina Laredo has not been damaged. Defendants contend that Plaintiff is unable to attribute its decline in revenue, which allegedly occurred at the same time that Casa Rita's opened, to Defendants. Defendants assert that a number of other factors could have affected the revenue of Cantina Laredo, including the economic downturn in the latter half of 2008. Defendants contend that if Cantina Laredo restaurants, which are located within three to four miles of each other, suffer no apparent drop in revenue, then there is no reason to believe Casa Rita's, located nine miles away, would take away Cantina Laredo's sales. Finally, Defendants assert that Plaintiff is not entitled to any disgorgement of their profits because the

Casa Rita restaurant has not turned a profit. Further, Defendants assert that Plaintiffs are not entitled to any such disgorgement because Defendants had no intent to confuse or deceive. Defendants assert that Plaintiff has not produced any evidence that their actions are malicious, fraudulent, deliberate, or willful.

Plaintiff counters that there is ample evidence for a jury to reasonably conclude that Defendants intentionally copied Plaintiff's trade dress and intended to confuse consumers about their affiliation with Cantina Laredo. Plaintiff contends that it has been damaged because Defendants have used its trade dress in areas where it likely would have opened new Cantina Laredo restaurants. Specifically, Plaintiff asserts that its Fort Worth franchisee has inquired into opening two more stores in Fort Worth, including north Fort Worth. Plaintiff asserts that, as a result of Defendants opening their Casa Rita's restaurant in north Fort Worth with the same interior design as Cantina Laredo, Defendants expanded in a manner that foreclosed markets within Cantina Laredo's natural zone of expansion. Plaintiff asserts that Defendants have been unjustly enriched by being the first Mexican food restaurant in the north Fort Worth area to use the interior decor at issue. Plaintiff also asserts that there is a genuine dispute of material fact as to whether Defendants have made a profit because Defendants have offered no evidence of actual costs or deductions that could be subtracted from Defendants' total sales in the amount of $3,420,325.

### 5. Dilution

Defendants argue that Plaintiff has no evidence whatsoever that its asserted trade dress has been diluted or is likely to be diluted. Plaintiff asserts that it has demonstrated that it created its disputed interior design in 2006 and has spent more than $35 million opening restaurants across the country implementing this design, and as a result, genuine disputes of material fact

exist as to whether Plaintiff owns a distinctive trade dress that is capable of dilution. Plaintiff further asserts that Defendants' use of its trade dress will lessen the uniqueness of the trade dress with the possible future result that a strong mark will become a weak mark, and thus a genuine dispute of material fact exists as to whether Defendants' use of Plaintiff's trade dress constitutes dilution under the Texas Anti-Dilution statute.

## IV.   Conclusion

After an exhaustive review of the myriad motions, responses, replies, and appendices filed by the parties and consideration of applicable law, the court determines that genuine disputes of material fact exist as to all claims. No purpose is served by the court writing a detailed analytical opinion discussing these issues when there are disputed facts that will necessarily have to be decided by a jury.

For the forgoing reasons, the court **denies** Defendants' Second Motion for Summary Judgment [Doc. #121]; **overrules** [Defendants'] Objection to and Motion to Strike Plaintiff's Second Summary Judgment Proof [Doc. #135]; and **denies** [Defendants'] Motion for Reconsideration of Denial of Defendants' Motion for Summary Judgment and Motion for Leave to Supplement Motion for Summary Judgment as Moot [Doc. #145]. The court **overrules** all objections to evidence. The court **denies** all motions to strike experts with respect to the pending motions for summary judgment. With respect to [Defendants'] Motion to Strike Plaintiff's Expert Chris Tripoli [Doc. #86], filed April 15, 2011, and Plaintiff's Motion to Strike Defendant[s'] Expert [Doc. #91], filed April 15, 2011, the court will rule on such motions prior to the trial of this action. The court will reserve ruling on the matters of whether Plaintiff's alleged trade dress may exclude the exterior of its restaurant and whether Plaintiff's restaurant locations outside of the Dallas-Fort Worth Metroplex may be considered.

*Excluding appendices, in excess of thirty documents have been filed by the parties that relate to the pending summary judgment motions, which include the actual motions, briefs, related motions, objections, responses, and replies. As reflected by the sheer number of documents, this case has been overlitigated, which the court henceforth will not allow. The court cannot allow the parties to consume scarce judicial resources when such consumption has marginal or no results in producing the outcome contemplated by the moving party. Further, such overlitigation is costly to the parties.*

*In light of the current posture of the case, the court strongly believes the parties should consider resolving this action without the necessity of trial. If the parties desire, the court will appoint a magistrate judge to mediate this case.*

**It is so ordered** this 30th day of March, 2012.

                                                          Sam A. Lindsay
                                                          United States District Judge